# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Shanni Snyder,                                  CASE NO. 24-CV-00478-NBF

      Appellant,


v.                                              Appeal Related to Case No. 22-20823-GLT
                                                in the United States Bankruptcy Court for
Christine Biros,                                the Western District of Pennsylvania

      Appellee


## **BRIEF FOR APPELLANT**

Counsel for Appellant:

John P. Lacher
PA I.D. #62297
The Lynch Law Group
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
TEL: (724) 776-8000
FAX: (724) 776-8001
jlacher@lynchlaw-group.com

AND

David L. Fuchs
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Avenue, First Floor
Carnegie, PA 15106
TEL: (412) 223-5404
FAX: (412) 223-5406
dfuchs@fuchslawoffice.com

**TABLE OF CONTENTS**

| SECTION | | PAGE NOS. |
|---|---|---|
| **I.** | Statement of Jurisdiction | **1** |
| **II.** | Statement of Issues Presented | **1** |
| **III.** | Statement of Related Cases | **2** |
| **IV.** | Standard of Appellate Review | **3** |
| **V.** | Statement of the Case | **3** |
| **VI.** | Argument | **6** |
| **A.** | Appellee Lacked Standing to Object to Snyder's Proof of Claim | **6** |
| **B.** | The Bankruptcy Court Erred by Not Applying the Correct Standard of Review to the Claim | **8** |
| **C.** | The Bankruptcy Court's Findings Regarding Witness Credibility Were Erroneous | **11** |
| **D.** | The Bankruptcy Court Lacked Jurisdiction Over the Dispute at Issue Herein and Improperly Acted in an Appellate Capacity in Regard to the Judgment Entered in Favor of Snyder in the District Court | **14** |
| **E.** | Snyder Performed Services for U LOCK, Inc. for Which She Was Not Paid and Thus She Has a Valid Claim Against U LOCK, Inc. Which Should Have Been Allowed by the Bankruptcy Court | **22** |
| **VII.** | Conclusion | **28** |

## TABLE OF CITATIONS

| CASES | PAGE NOS. |
|---|---|
| American Flint Glass Workers Union v. Anchor Resolution Corporation, 197 F.3d 76 (3d Cir. 1999) | 3 |
| Benninger v. First Colony Life Insurance, 357 B.R. 337 (Bankr. Ct. W.D.Pa. 2006) | 20, 21 |
| Brennan v. Dillion, 483 F.2d 1334 (10th Cir. 1973) | 25 |
| Bridgeport Music, Inc. v. Smith, 714 F.3d 932 (6th Cir. 2013) | 10 |
| Burlington Northern Railroad v. Hyundai Merch. Marine Co., 63 F.3d 1227 (3d Cir. 1995) | 18 |
| DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) | 6 |
| Dole v. Odd Fellows Home Endowment Bd., 912 F.2d 689 (4th Cir. 1990) | 25 |
| Donovan v. DialAmerica Marketing, Inc., 757 F.2d 1376 (3d Cir. 1985) | 25 |
| Equal Employment Opportunity Commission v. Zippo Mftg. Co., 713 F.2d 32 (3d Cir. 1983) | 25 |
| Federated Department Stores v. Moitie, 452 U.S. 394, 101 S. Ct. 2424, 69 L.Ed 2d 103 (1981) | 19 |
| Fred Reuping Leather Co. v. Fort Greene Nat. Bank of Brooklyn, 102 F.2d 372 (3d Cir. 1939) | 8 |
| Genesis Healthcare Corp. v. Synczyk, 569 U.S. 66, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) | 25 |
| Grace v. Bank Leumi Tr. Co. of New York, 443 F.3d 180 (2d Cir. 2006) | 10 |
| Gratiot County State Bank v. Johnson, 249 U.S. 246 (1919) | 11, 16 |
| Horne v. Flores, 557 U.S. 433 (2009) | 6 |
| In Re Abengoa Bioenergy Biomass of Kansas, 2018 WL 2138620 (Bankr. Ct. D. Kan. 2018) | 8 |
| In Re Dove-Nation, 318 B.R. 147 (8th Cir. BAP 2004) | 10 |
| In Re Garofano, 99 B.R. 624 (Bankr. Ct. E.D.Pa. 1989) | 16, 21 |
| In Re Global Indus. Techs., Inc., 645 F.3d 201 (3d Cir. 2011) | 7 |
| In Re Heath, 331 B.R. 424 (9th Cir. BAP 2005) | 10 |
| In Re Morrison, 69 B.R. 586 (Bankr. Ct. E.D.PA. 1987) | 8 |
| In Re Oakwood Homes Corp., 449 F.3d 588 (3d Cir. 2006) | 9 |
| In Re Parker Montana Co., 57 B.R. 419 (Dist. Ct. D.Mont. 1985) | 8 |
| In Re PPI Enterprises (US), Inc., 324 F.3d 197 (3d Cir. 2003) | 9 |
| In Re Savidge, 57 B.R. 389 (Bankr. Ct. D.Del. 1986) | 8 |

| | |
|---|---|
| In Re Telephonics, 85 B.R. 312 (Bankr. Ct. E.D.Pa. 1988) | **17** |
| In Re Thompson, 965 F.2d 1136 (1st Cir. 1992) | **8** |
| In Re Trusted Net Media Holdings, LLC, 334 B.R. 470 (Bankr. Ct. N.D.Ga. 2005) | **8** |
| In Re U LOCK, Inc., 2024 WL 878464 (Bankr. Ct. W.D.Pa 2024) | **6, 13, 24, 27** |
| In Re Werth, 54 B.R. 619 (Dist. Ct. D.Colo. 1985) | **8** |
| Intervest National Bank v. Welch, 2011 U.S. Dist. LEXIS 38510 (Dist. Ct. E.D.Pa. 2011) | **17** |
| Johnson v. Home State Bank, 501 U.S. 78 (1991) | **9** |
| Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) | **6** |
| Mason v. Integrity Ins. Co., 709 F.2d 1313 (9th Cir. 1983) | **16** |
| Mei Xing Yw v. Hasaki Rest., Inc., 944 F.3d 395 (2d Cir. 2019) | **24** |
| Mellon Bank v. Makaroff, 153 B.R. 155 (Dist. Ct. W.D.Pa. 1993) | **3** |
| Nationwide Mutual Insurance v. Dardeau, 503 U.S. 318, 112 S. Ct. 1334, 117 L. Ed. 2d 581 (1992) | **26** |
| Northern Pipeline Construction C. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) | **15** |
| O'Neal Steel, Inc. v. Chatkin, 465 B.R. 54 (Bankr. Ct. W.D.Pa. 2012) | **17, 18, 21** |
| Peloro v. United States, 488 F.3d 163 (3d Cir. 2007) | **18** |
| Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L. Ed. 281 (1939) | **20, 21** |
| Radelescu v. Moldowan, 845 F.Supp. 1260 (Dist. Ct. N.D.Ill. 1994) | **26** |
| Reinert v. Bould, 2015 Bankr. LEXIS 803 (Bankr. Ct. W.D.Pa. 2015) | **18** |
| Rodrigues v. Unifund, CCR, LLC, 690 Fed. Appx. 799 (3d Cir. 2017) | **19** |
| Salinas v. Com. Interiors, Inc., 848 F.3d 125 (4th Cir. 2017) | **24** |
| Stern v. Marshall, 564 U.S. 462 (2011) | **15** |
| Teachers Ins. & Annuity Ass'n of America v Butler, 803 F.2d 61 (2nd Cir. 1988) | **17, 22** |
| United States v. Braddy, 837 F. App'x 112 (3d Cir. 2020) | **17** |
| United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989) | **9** |
| Whiteley v. Slobodian, 592 B.R. 798 (Bankr. Ct. M.D.Pa. 2018) | **8** |
| **STATUTES AND RULES** | |
| 11 U.S.C. § 101 | **9** |
| 11 U.S.C. § 157 | **3, 14, 15, 16, 21, 22** |
| 11 U.S.C. § 303 | **4, 16, 28** |
| 11 U.S.C. § 502 | **2, 9, 10, 13, 28** |

| 28 U.S.C. § 158 | **1** |
|---|---|
| 28 U.S.C. § 1294 | **17, 22** |
| 28 U.S.C. § 1334 | **15, 16, 22** |
| 29 CFR 779.103 | **27** |
| 29 CFR 779.105 | **25** |
| 29 U.S.C. §§ 201-209 | **1, 4, 21, 23, 25-26** |
| Fed. R. Bankr. Proc. 9033 | **21** |
| Fed. R. Evid. 614 | **13** |
| F.R.C.P. 60 | **10, 20** |
| Us Const., art. III | **6, 7** |
| **<u>TREATISES</u>** | |
| Bloomberg Law: Bankruptcy Treatise, Pt. II, Ch. 51 at § III (D. Michael Lynn et al. eds. 2017) | **7** |
| 4 Collier on Bankruptcy 502.02 [2][d], 16th ed. (Richard Levin & Henry Sommer eds.) | **7** |

## I.     **Statement of Jurisdiction**

This Honorable Court has jurisdiction over the instant Appeal pursuant to 28 U.S.C. § 158(a) in that the Order being appealed from is a final order issued by the United States Bankruptcy Court for the Western District of Pennsylvania.

## II.     **Statement of Issues Presented**

1. Whether Appellee Lacks Standing to pursue the objection to claim?

2. Whether the Bankruptcy Court erred by not applying the correct standard of review to the claim?

3. Whether the Bankruptcy Court erred in relitigating and allowing a collateral attack to a final judgment which had been entered by default in the United States District Court and which default judgment had not been subject to any challenge or reconsideration as provided for in the Federal Rules of Civil Procedure?

4. Whether the Bankruptcy Court improperly acted as an appellate court in regard to the judgment entered in favor of Shanni Snyder by the District Court after the District Court had entered default judgment following a hearing and the taking of testimony?

5. Whether the Bankruptcy Court erred in hearing, and ruling upon, the Objection to Shanni Snyder's Claim where a withdrawal of the reference had been requested from the District Court regarding said matter and where it had been alleged that withdrawal of the reference was mandatory?

6. Whether the Bankruptcy Court erred in determining that Appellant Shanni Snyder did not meet her burden of proof in regard to the validity of her claim?

7. Whether the Bankruptcy Court erred in finding that the Fair Labor Standards Act (29 U.S.C. §§ 201-209) ("FSLA") is not applicable to Shanni Snyder's claim?

8.   Whether the Bankruptcy Court erred in finding that Shanni Snyder performed no work whatsoever entitled to compensation even if, arguendo, the FSLA was inapplicable herein?

9.   Whether the Bankruptcy Court erred in disallowing Shanni Snyder's claim in its entirety rather than reducing the claim amount pursuant to 11 U.S.C.§502 to reflect actual work performed?

### III.   <u>Statement of Related Cases</u>

Presently before the United States Court of Appeals for the Third Circuit at Case No. 24-1842, is an appeal from the District Court's *dismissal as moot* as to a motion to withdraw the reference directly related to the underlying Bankruptcy Court case.  In the Third Circuit case, Biros has filed a motion to dismiss the appeal as interlocutory. Snyder intends to oppose Biros' motion because the District Court's Order occurred after the Bankruptcy Court's Order in this case and, thus, was final.  The disposition of this appeal relates to the standard of review that this Court should apply in this case because the withdrawal of the reference was mandatory.  As such, the impact is important because the matters would be reviewed *de novo* and additional evidence could be adduced if the Bankruptcy Court had submitted proposed findings and a recommendation rather than a final judgment as Snyder asserts was the proper course of action. If the United States Court of Appeals for the Third Circuit grants the motion to dismiss, it will be necessary for this Court to rectify Snyder's right to have an Article III Court render a final ruling considering that the motion to withdraw reference was mandatory and removed Snyder's consent to a final judgment by an Article I Court.

Other cases related to the underlying bankruptcy are pending before the Third Circuit including U Lock's action for automatic stay violations against Biros, Case No. 23-2293, Snyder's action as assignee of the Chapter 7 Trustee against Biros, Case No. 24-1202, and

George Snyder's appeal relating to the denial of his proof of claim, Case No. 24-1163.

Also before this Honorable Court is George Snyder's appeal relating to the Bankruptcy Court allowance of an administrative claim for rents where he suggests that the Bankruptcy Court should have reduced the claim because the Trustee paid certain taxes on the property.

## IV.   Standard of Appellate Review

In reviewing a decision of the Bankruptcy Court, this Honorable Court is to apply a clearly erroneous standard to the Bankruptcy Court's findings of fact and is to apply plenary review to the Bankruptcy Court's conclusions of law. American Flint Glass Workers Union v. Anchor Resolution Corporation, 197 F.3d 76, 80 (3d Cir. 1999); Mellon Bank v. Makaroff, 153 B.R. 155, 157 (Dist. Ct. W.D.Pa. 1993).

Under the circumstances herein, however, this standard of review is prejudicial because Snyder withdrew her consent to final judgment by an Article I Court by filing a mandatory motion to withdraw the reference pursuant to 11 USC 157(d) which was pending in the District Court at the time of final judgment.  The difference is significant in that if withdrawal of the reference had been treated as mandatory, the Bankruptcy Court would have only been able to enter proposed conclusions and a recommendation that would be reviewed *de novo* review as to the facts and the law. In addition, additional evidence could have been offered in the District Court.

## V.   Statement of the Case

From January 1, 2016 through February 15, 2020, Shanni Snyder ("Snyder") performed security video monitoring services for U LOCK, Inc., the Debtor in the above-referenced Chapter 7 Case (7/14 Transcript p. 15; A-602).

Wage payments to Snyder for said services were deferred while U LOCK, Inc. attempted to stabilize its financial condition. Ultimately, Snyder never received payment for her services (7/14 Transcript pp. 18-19; A-605,606).

On July 14, 2021, Snyder filed a Complaint against U LOCK, Inc. in the United States District Court for the Western District of Pennsylvania at Case No. 21-CV-904. Snyder sought an award of damages related to the wages she earned but which had not been paid by U LOCK, Inc. Snyder asserted her claim pursuant to the Fair Labor Standards Act (29 U.S.C. §§201-209) (7/14 Transcript pp. 19-20; A-606,607).

U LOCK, Inc. did not respond to Snyder's Complaint which led Snyder to seek the entry of a default judgment in her favor (Transcript p. 19; A-606).

The District Court, on October 18, 2021, held a hearing at which the District Court cited the legal standard applicable to the case, noted that it had reviewed the entire record in case, heard testimony under oath from Snyder, entered judgment in Snyder's favor and explained its reasoning for doing so. No one has ever sought relief from the judgment in the District Court (7/14 Transcript pp. 20-21; A-607, 608).

On April 27, 2022, Snyder filed an involuntary bankruptcy petition pursuant to 11 U.S.C. § 303(b)(2) against U Lock alleging that she was owed money based on the judgment and that the corporate entity generally failed to pay its debts when they became due. A-006-008.  On June 17, 2022, the Bankruptcy Court entered an Order for Relief, granting the bankruptcy petition.  A-011.

Snyder filed a Proof of Claim in the above-referenced Chapter 7 Case at Claim No. 1. Said claim was based upon the judgment entered in her favor and has attached thereto an Abstract of said judgment (7/14 Transcript p. 22; A-609). Furthermore, U LOCK, Inc. listed Shanni Snyder's

4

claim in its schedule E/F (Doc. No. 62; A-013) and did not list said claim as unliquidated, contingent or disputed.

Snyder asserts that she performed services for which she was not paid, that a final judgment based upon said unpaid wages was entered in her favor, that the judgment was never challenged in the District Court and the judgment is a valid, final judgment. As such, Snyder asserts that her claim is valid and should be allowed (7/14 Transcript pp. 14-22; A-601 through 609).

Christine Biros ("Biros") filed an Objection to Snyder's claim (Doc. No. 340; A-161). Snyder asserted that the judgment entered by the District Court was a final valid judgment not subject to collateral attack and, in fact, filed a Motion to Withdraw the Reference of this matter to the District Court (Doc. Nos. 357, 389, 469; A-455, A-517, A-559). The Bankruptcy Court ruled that it was not bound by the judgment entered by the District Court and could assess the merits of Snyder's claim based on the Objection of Biros.

On July 14, 2023, the Bankruptcy Court held an evidentiary hearing regarding the merits of Snyder's claim (Doc. No. 488; A-588). At the conclusion of said evidentiary hearing, the Bankruptcy Court called upon the parties to file post-hearing briefs (Doc. Nos. 497, 498; A-702, A-713).

Thereafter, the Bankruptcy Court issued a scathing Opinion attacking Snyder's credibility and honesty (Doc. No. 559; A-736). The Bankruptcy Court further issued an Order denying Snyder's Proof of Claim in its entirety (Doc. No. 560; A-775).

Snyder has appealed the decision of the Bankruptcy Court to this Honorable Court (Doc. Nos. 568 and 575; A-777, A-784).

The Bankruptcy Court, via its opinion, has clearly reached conclusions about Snyder's character which are respectfully, but vehemently, disagreed with. In any event, Snyder will not dwell on those matters so much but instead will reiterate that this is a straightforward case in which Snyder performed work, did not get paid, obtained a final, non-appealable judgment in this Honorable Court which was never challenged and that the Bankruptcy Court erred in disallowing Snyder's claim based upon said work performed and judgment.

### VI.   Argument

### A.  Appellee Lacked Standing to Object to Snyder's Proof of Claim[1]

A lack of standing eliminates subject matter jurisdiction. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341–42 (2006).  Bankruptcy standing is governed by both Article III of the Constitution and the Bankruptcy Code. The Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III. "[A]n essential and unchanging part of the case-or-controversy requirement" is the doctrine of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). To have standing under Article III, "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." Horne v. Flores, 557 U.S. 433, 445 (2009).

In this case, there will be no distribution to unsecured general creditors and administrative claims will only be partially paid. Snyder's claim is a general unsecured claim. The Bankruptcy Court's opinion explains that the estate is administratively insolvent. In re: U Lock, 2024 WL 878464 *4 (Bankr. Ct. W.D.Pa. 2024).  Therefore, because granting or denying

---

[1] This issue was not listed in the Statement of Issues.  However, standing invokes the jurisdiction of the Court and it cannot be waived.

Snyder's claim in this bankruptcy case will not provide any financial benefit to Biros, or increase any distribution to her, she lacks Article III standing.

Whether it be Article III standing or statutory standing under the Bankruptcy Code, "the relevant query" is whether the creditor "has a legally protectable interest that could be affected by this bankruptcy proceeding." Whiteley v. Slobodian, 592 B.R. 798, 804 (Bankr. M.D. Pa. 2018)(citing In re Global Indus. Techs., Inc., 645 F.3d 201, 210 (3d Cir. 2011)).  Applying that test, as there will be no distribution to unsecured creditors such as Shanni Snyder, no "legally protectable interest" exists and the entire objection process was an academic exercise meant to cast doubt on the District Court's 2021 judgment in favor of Snyder.

Moreover, a Chapter 7 Trustee was appointed in this case and the general proposition is that a creditor lacks standing to object to a proof of claim by another creditor when a trustee has been appointed.  Where a Trustee has been appointed, a creditor lacks standing to object to another creditor's claim absent making demands upon the Trustee and his agreement to defer to the creditor.

Bloomberg's *Bankruptcy Treatise* states "Thus, when a trustee has been appointed, courts generally hold that a general creditor does not have standing to object to a proof of claim."[2] *Collier* agrees—"Yet apart from the line of cases permitting some indirect mode of contest, the right of individual creditors to object to the claim of another creditor is restricted. While a creditor may object before a trustee is qualified or when there is no trustee, once the trustee has been duly appointed it is the duty of the trustee to examine and take action concerning the disallowance of claims." Richard Levin & Henry J. Sommer eds., 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (16th ed.).

---

[2] BLOOMBERG LAW: BANKRUPTCY TREATISE, Pt. II, Ch. 51 at § III.C. (D. Michael Lynn et al. eds., 2017), available at www.bloomberglaw.com/content/bankruptcytreatise.

In In re Abengoa Bioenergy Biomass of Kansas, 2018 WL 2138620 (Bankr. Ct. D. Kan. 2018), the Bankruptcy Court held that a creditor lacking a pecuniary interest and where a Trustee was appointed has no standing.  This is because the bankruptcy code and rules impose a duty on the trustee to review and object to claims where appropriate.  In re Trusted Net Media Holdings, LLC, 334 B.R. 470 (Bankr. Ct. N.D. Ga. 2005). A creditor will only receive authorization to object to the claim of another creditor if the trustee refuses to act and the creditor establishes that the objection will benefit the estate.   In re Thompson, 965 F.2d 1136, 1147 (1st Cir. 1992). The trustee acts as the spokesman for all creditors in the discharge of his duty, unless the trustee refuses to take action, so as to assure the orderly and expeditious administration of the estate. In re Morrison, 69 B.R. 586 (Bankr. Ct. E.D.Pa. 1987).  "A general creditor of a bankrupt has no right to contest another creditor's claim ... unless upon application the trustee has refused to do so and that ... court has authorized the creditor to proceed in the trustee's name." Fred Reuping Leather Co. v. Fort Greene Nat. Bank of Brooklyn, 102 F.2d 372 (3rd Cir. 1939);  In re Savidge, 57 B.R. 389, 392 (Bankr. Ct. D.Del.1986); In re Werth, 54 B.R. 619, 622 (Dist. Ct. Colo.1985); In re Parker Montana Co., 47 B.R. 419, 421 (Dist. Ct. D.Mont.1985).[3]

Therefore, it is respectfully submitted that this Honorable Court should vacate the Bankruptcy Court's Order and remand the matter to the Bankruptcy Court to dismiss the objection to the claim unless the estate becomes solvent to a point where unsecured creditors will be paid and then to hear the objection only if the Trustee pursues it or refuses to act.

### B.  The Bankruptcy Court Erred by Not Applying the Correct Standard of Review to the Claim

---

[3] It is recognized that there are disagreements among Bankruptcy Courts as to the prudential standing issues, including non-binding cases from the Western District of Pennsylvania Bankruptcy Court. Regardless, in this case, Biros lacks both Constitutional standing because of a lack of harm as a result of Snyder's proof of claim and because she usurped the Trustee's authority which, as the Bankruptcy Court recognized, eroded assets in the estate through unnecessary litigation.

While the Bankruptcy Court correctly cites in its Opinion that a claim is presumed valid unless an objection is made, 11 USC 502(a), it never explained what standards it applied after the objection was made.  Rather, the Bankruptcy Court simply did not believe the veracity of the underlying facts that resulted in the District Court's judgment.  It appears that the Bankruptcy Court (an Article I Court) felt it could disregard the judgment of the District Court (an Article III Court) and evaluate the merits of Snyder's claim as if the District Court judgment had never occurred. Further, the Bankruptcy Court performed its review without utilizing proper, applicable standards.

First, the Bankruptcy Court was obligated to begin with the language of the Bankruptcy Code. In re Oakwood Homes Corp., 449 F.3d 588, 595 (3d Cir. 2006), *citing* United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).

Second, the Bankruptcy Court needed to apply the broadest available definition of a "claim."  Johnson v. Home State Bank, 501 U.S. 78, 83,(1991) ("We have previously explained that Congress intended by this language to adopt the broadest available definition of `claim.'"). This is because under 11 USC 101(5)(A), a claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secure, or unsecured."  The Third Circuit has often said that "claim" was intended to be read very broadly. E.g., In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 203 (3d Cir. 2003).

Third, the Bankruptcy Court is limited in the reasons it can disallow a claim when an objection is made.  As the Third Circuit explained in In re Oakwood Homes Corp., 449 F.3d at 595, if such an objection is made, "the Bankruptcy Court holds a hearing and reduces the

allowable amount of the claim pursuant to the remainder of § 502. Specifically, the Bankruptcy

Court would look to a specific subsection of § 502(b), and [...] § 502(b) itself."

Section 502(b) sets forth the exclusive grounds for disallowance of claims. *In re Heath*,

331 B.R. 424, 426 (9th Cir. BAP. 2005); *See also* In re Dove-Nation, 318 B.R. 147, 153 (8th

Cir. BAP 2004)("The Bankruptcy Code could not be more clear: a claim, proof of which is filed,

shall be allowed unless it falls within one of the exceptions set forth in Section 502(b)).

The Bankruptcy Court clearly did not apply the broadest definition to Snyder's claim and

it did not mention, let alone, apply § 502(b) or point out which section it relied upon to disallow

the claim.  Indeed, the closest statutory objection would be under § 502(b)(1) which requires a

test as to the ability to enforce the judgment against the debtor, but the Bankruptcy Court made

no finding that the default judgment could not be enforced against the debtor.  The fact that the

Bankruptcy Court did not believe the testimony of the creditor, while the District Court did

believe her, is not a basis to find the inability to enforce the judgment.  In this case, the judgment

would be enforceable unless an interested party sought to vacate the judgment under Rule 60.[4]

Due to the failure of the Bankruptcy Court to apply the proper standards, coupled with

the errors below, it is respectfully submitted that this Honorable Court should vacate the Order of

the Bankruptcy Court and remand the matter for a new hearing applying the proper standards.

**C.** **The Bankruptcy Court's Findings Regarding Witness Credibility were Erroneous.**

---

[4] It is noted that Biros stated in a separate bankruptcy that she planned on intervening in the *Shanni Snyder v. U Lock* case and filing a Rule 60 motion. *See In re: Shanni Snyder,* 18-21983 (Bk. W.D.Pa.), Entry 72 ("33. Movant has filed this Motion for Relief from Stay to seek to vacate the Judgment received by the Debtor against U-Lock * * * 35. Accordingly, Movant requests relief from the automatic stay to take the necessary action to vacate the Judgment obtained by the Debtor against U-Lock [...]").   However, Biros never filed the motion even though she could have if her "interests are strongly affected." Bridgeport Music, Inc. v. Smith, 714 F.3d 932, 940 (6th Cir. 2013)(collecting cases showing that a non-party can file a Rule 60 motion); Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 188 (2d Cir. 2006)(same).

As set forth in Snyder's Statement of the Case, _supra_, Snyder vehemently disagrees with the Bankruptcy Court's findings regarding the credibility of Shanni Snyder, George Snyder and Kash Snyder, all of whom testified at the evidentiary hearing on Biros' Objection to Snyder's Claim.

As is also set forth in Snyder's statement of the Case, _supra_, this Court applies a clear error standard as to factual findings; however, Snyder reiterates that since she filed a Motion to Withdraw the Reference, which was mandatory, had the Bankruptcy Court not mooted the proceeding by rendering a final judgment, Snyder would be entitled to adduce additional evidence (especially as to the suppositions of the Bankruptcy Court) and have a _de novo_ review of the facts.

Regardless, Snyder respectfully requests that this Honorable Court consider the context in which the Bankruptcy Court's credibility determinations were made.

Snyder's judgment was obtained in the District Court on October 18, 2021 (Claim 1-1, A-004).  Snyder filed for involuntary bankruptcy against U Lock on April 27, 2022.  A-006-008. Biros appeared in the action and moved to dismiss the bankruptcy.  However, on June 17, 2022, the Bankruptcy Court entered an Order for Relief, granting the bankruptcy petition.  A-011.  The Order for Relief constituted a final judgment on the merits of Snyder's claim and nobody, including Biros, appealed or sought reconsideration.  _See Gratiot County State Bank v. Johnson,_ 249 U.S. 246 (1919).

Snyder filed her Proof of Claim in the U LOCK Case on May 27, 2022 (Claim 1-1, A-001).   Biros did not file her Objection to Snyder's Claim until February 24, 2023 (Doc. 340, A-161). The evidentiary hearing on said claim objection did not occur until July 14, 2023 (Doc. 488, A-588).

Despite no one, including Biros, challenging the Snyder Claim for an extended period of time, the Bankruptcy Court noted in response to a Biros request for relief from stay to finally file an objection to Snyder's Claim, at a January 27, 2023 hearing, that "no one has sought to object to Shanni Snyder's claim" (Doc. 316, Transcript p.10, A-069) and thus noted that "the Court's hands are tied" (Id.). The Bankruptcy Court did make clear, however, that "the Court has not been shy about expressing its concerns about the nature of the claim" (Id.). Within one (1) month of said hearing, the Objection to Claim was filed (Doc. 340, A-161).

At a hearing on April 13, 2023, the Bankruptcy Court noted that even if a Motion seeking withdrawal of the reference was filed, the Bankruptcy Court fully intended to "move forward with the evidentiary hearing under the schedule I've just outlined" (Doc. 377, Transcript page 14; A-478). The Bankruptcy Court thereafter added that "I'm not making any final determinations, but the veracity and validity of the Shanni Snyder Claim is certainly somewhat dubious" (Doc. 377, Transcript page 377; A-479).

As the foregoing Bankruptcy Court statements regarding the "nature", "veracity", and "validity" of Snyder's Claim occurred well prior to the evidentiary hearing on the motion, it is respectfully submitted that this Honorable Court should consider that Snyder wholly disagrees with the Bankruptcy Court's credibility findings and also consider context in which said findings were made.

In addition, the Bankruptcy Court utilized suppositions not contained on the record to reach its conclusions.  For example, the Bankruptcy Court, in its Opinion, raised questions such as: "How did Ms. Snyder come to work for U Lock in the first place, why was it necessary to monitor the property, how frequent were the push notifications [the camera sent] and how much time was actually spent checking the cameras and contacting George, who monitored the

property after Ms. Snyder quit in February 2020, why stop at 3 a.m., what happened after 3 a.m.,
how was Ms. Snyder able to remotely access the cameras at all if U Lock did not have wifi at the
time, why did George not acquire his own dropcams or download the application to monitor
them himself, why did the Department of Labor visit Ms. Snyder's home?  U Lock, 2024 WL
878464 *15.  The Bankruptcy Court even pondered, "Was this issue not raised during the
evidentiary hearing because Ms. Biros received a satisfactory answer through discovery?"  Id.

The problem with this speculation is that the Bankruptcy Judge was at the hearing, as was
counsel for Ms. Biros. Either of them could have simply asked for the answers from the
witnesses.  See Federal Rule of Evidence 614(b)("The court may examine a witness regardless of
who calls the witness").  Snyder, on the other hand, was defending an objection to her Proof of
Claim referencing her federal District Court judgment– and she never filed a Proof of Claim
under the FLSA – so she hardly could have anticipated what the Bankruptcy Court pondered and
speculated about.   Rather, she believed that the Court would stick to its limited jurisdiction
under 11 USC 502(b) which, at most, allowed an inquiry into the enforceability of the federal
judgment debt.

The Bankruptcy Court chastised George Snyder and Kash Snyder for not being credible
and that their testimony seemed forced– but these individuals were at the hearing because Biros
served them with a subpoena, not because Shanni Snyder served them.

These findings are problematic under the clear error standard of review because, if the
Bankruptcy Court had rendered a recommendation instead of a final judgment that prejudicially
usurped Snyder's Motion to Withdraw the Reference, the rules would have allowed Snyder to
adduce additional evidence to answer all of these speculative questions raised by the Bankruptcy

13

Court which were not raised at the hearing when testimony occurred despite Biros, and the

Court, being present and able to ask.

D. **The Bankruptcy Court Lacked Jurisdiction Over The Dispute At Issue Herein And**
   **Improperly Acted In An Appellate Capacity In Regard To The Judgment Entered**
   **In Favor Of Snyder In District Court**

28 U.S.C.§157(d) provides that:

> "The District Court may withdraw, in whole or in part, any case or proceeding referred
> under this section, on its own motion of on timely motion any party, for cause shown.
> The District Court <u>shall</u>, on timely motion of party, so withdraw a proceeding if the
> court determines that resolution of the proceeding requires consideration of both title
> 11 and other laws of the United States regulating organizations or activities affecting
> interstate commerce." (emphasis added)

With the instant contested matter requiring consideration of title 11 (objection to claim)

and other laws of the United States regulating organizations or activities affecting interstate

commerce (FLSA), the plain language of 28 U.S.C.§157(d) indicates that a withdrawal of the

reference from the Bankruptcy Court to the District Court is mandatory.

If, in fact, the reference withdrawal is mandatory, the Bankruptcy Court, with no

reference, would lack jurisdiction over the contested matter at issue herein. Snyder did, in fact,

seek a withdrawal of the reference (Doc. 389; A-517) but the Bankruptcy Court proceeded to

preside over the matter anyway and ultimately disallowed Snyder's claim (Doc. 560; A-775).

This was improper in that the Bankruptcy Court should not have proceeded in light of the

reference withdrawal request which was, again, mandatory, or should have proceeded and

submitted proposed findings of facts and a recommendation subject to *de novo* review.

14

The importance and prejudice to Snyder that occurred due to the withdrawal of the reference issue, is that it denied Snyder her right to a decision and interpretation of the facts and federal statute by an Article III judge.  If the Bankruptcy Court would not have entered a final judgment, it could have entered a recommendation, but the facts and law would have been reviewed *de novo* by this Honorable Court and Snyder could have requested to adduce evidence to address the Bankruptcy Court's suppositions.  Because the Bankruptcy Court proceeded to final judgment, this Court reviews the matter under a much more strict standard.

In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Supreme Court held that the Bankruptcy Act of 1978 impermissibly shifted essential attributes of judicial power from the Article III District Court to its non-Article III adjunct, the Bankruptcy Court.   Congress responded by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, which provided District Courts with original but not exclusive jurisdiction over all bankruptcy proceedings.   See 28 U.S.C. §  1334(b) (1994).   Moreover, to insulate the 1984 Amendments from a constitutional assault like that in Marathon, Congress enacted 28 U.S.C. §  157.   Section 157 also governs the District Court's authority to withdraw the reference and, consistent with the Marathon decision, mandates withdrawal in cases requiring material consideration of non-bankruptcy federal law.  See 28 U.S.C. §  157(d).

Once Snyder filed her Motion to Withdraw the Reference, she eliminated her consent to final judgment by the Bankruptcy Court as to the interpretation of the FLSA and her claim. Rendering a final judgment before the District Court ruled effectively denied Snyder an Article III Court, running afoul of Marathon and Stern v. Marshall, 564 U.S. 462 (2011).

Even assuming, arguendo that the Bankruptcy Court could proceed despite the

15

withdrawal request, there are several reasons why it was improper to adjudicate the objection to the claim.

Initially, the entire jurisdiction of the Bankruptcy Court was premised on Snyder filing an involuntary petition under 11 USC 303(b)(2).  Prior to entering the Order for Relief, Biros appeared in the action and raised objections and sought to dismiss the proceeding.  The Bankruptcy Court entered the Order for relief anyway, which necessarily adjudicated that Snyder maintained a claim over $10,000.  An Order for Relief and the matters determined therein is binding on the debtor and the parties that appeared in the case.  *See* Gratiot County State Bank v. Johnson*, 249 U.S. 246, 251-252 (1919)(order for relief adjudicates the matters decided and is binding on "all creditors parties to the proceeding").  Entry of the order for relief upon an involuntary petition under § 303 is a final, appealable order. Mason v. Integrity Ins. Co., 709 F.2d 1313, 1318 (9th Cir. 1983). As such it is entitled to preclusive effect on the matters finally decided as against the same parties or those in privity. See *generally id*. at 1316 ("An adjudication, and concomitantly an order for relief, is ... a conclusive determination of the debtor's status in bankruptcy, and res judicata between the actual parties to the proceeding to all the facts and subsidiary questions of law on which it is based").

More importantly, as to the Bankruptcy Court allowing an attack of Snyder's District Court judgment, Bankruptcy Courts are "far less inclined to allow a collateral attack on a pre-petition judgment when, as in the present case, the judgment has been entered by the District Court of this very district." In re Garafano, 99 B.R. 624, 633 (Bankr. Ct. E.D. Pa. 1989).  Indeed, the Garafano court made it clear: "It must be recalled that it is the District Court that has, in the first instance, jurisdiction over all bankruptcy cases which are, in turn, referred to the bankruptcy judges for that district." 28 U.S.C. §§ 1334(a), 157(a). Thus, we are faced here with a prior

decision issued by a court of the superior branch of our own forum. The Bankruptcy Court did not have the authority to effectively overrule a judgment of its own District Court. *Compare* Teachers Ins. & Annuity Ass'n of America v. Butler, 803 F.2d 61, 66 (2d Cir.1986) (relitigation of prior District Court judgment would circumvent procedures for appeal of District Court decisions to the Court of Appeals); and *In re Telephonics*, 85 B.R. 312, 318 (Bankr. Ct. E.D.Pa.1988) (Bankruptcy Court defers to power of court that entered a judgment, which should generally retain control over its own judgment)." *Id.* In fact, in Teachers Ins. & Annuity, at 66-67, the Second Circuit stated, "allowing relitigation in the Bankruptcy Court would subvert the intent of 28 U.S.C. § 1294(1) (1982) which provides that appeals from District Court decisions are to be heard by the court of appeals for the circuit that embraces the district."   Thus, a Constitutional issue exists where an Article I court reviewed an Article III Court's judgment without Snyder's consent since Snyder objected and moved to withdraw the reference.

To be clear, precluding the Bankruptcy Court from effectively overruling the District Court would not leave Biros without a remedy.  Prior to the hearing on the claim, Biros announced in related cases that she intended to petition the District Court to open the judgment against U Lock and she obtained the necessary orders to lift any perceived stay. *See* footnote 4, *supra.*

A collateral attack is an attack on a judgment in a proceeding other than a direct appeal. United States v. Braddy, 837 F. App'x 112,114 (3d Cir. 2020). Generally, a party cannot challenge the validity of an existing judgment. Intervest National Bank v. Welch, 2011 U.S. Dist. LEXIS 38510 at *20 (Dist. Ct. E.D.Pa. 2011).

The Bankruptcy Court cited, inter alia, the case of O'Neal Steel, Inc. v. Chatkin, 465 B.R. 54 (Bankr. Ct. W.D.Pa. 2012) (Doc. 377, 559; A-476, A-753) to stand for the proposition that

default judgments that are not actually litigated do not bar litigation of the issue in a second federal court. The O'Neal Court, however, noted that said proposition is a "general rule" that applies to "typical" default judgments. Id. At 65.

In the instant case, the default judgment entered in the District Court was entered after a hearing, the taking of evidence and a ruling based upon said evidence. Even without the participation of Defendant U LOCK, Inc., this was not a "typical" entry of a default judgment where a Clerk enters judgment in response to a praecipe or a motion to enter a default. As such, the "general rule" set forth in Chatkin is not applicable herein.

As such, the default judgment at issue herein is not subject to collateral attack. Said default judgment is a valid, final judgment entitled to the preclusive effect afforded by the doctrines of collateral estoppel and res judicata.

Collateral estoppel applies when (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the final judgment. Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007); Burlington Northern Railroad v. Hyundai Merch. Marine Co., 63 F. 3d 1227, 1231-1232 (3d Cir. 1995); Reinert v. Bould, 2015 Bankr. LEXIS 803 at *21 (Bankr. Ct. W.D.Pa. 2015).

Here, we have (1) identical issues (the validity of Snyder's claim for unpaid wages); (2) the issue was actually litigated (the District Court conducted a hearing, took evidence and ruled based upon said evidence with Debtor U LOCK having had a full and fair opportunity to litigate the issue in question in the prior proceeding of which U LOCK was properly noticed); (3) the judgment entered by the District Court was final, unchallenged and unappealed; and (4) the

determination of the issue involved herein was essential to the final judgment entered by the District Court.

In light of the foregoing, collateral estoppel is applicable herein and the Bankruptcy Court was precluded from addressing the issues raised in the Biros Objection to the Snyder Claim.

The doctrine of res judicata likewise precluded the Bankruptcy Court from relitigating the issues which were ruled upon by the District Court and resulted in Snyder's judgment.

Res judicata applies when (1) the judgment in the prior action is valid, final and on the merits; (2) the parties in the later action must be identical or in privity with those in the prior action; and (2) the claim in the later action arises out of the same transaction or occurrence as the claim in the earlier action. Federated Department Stores v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L.Ed 2d 103 (1981); Rodrigues v. Unifund CCR, LLC, 690 Fed. Appx. 799, 801 (3d Cir. 2017).

Here, again, we have a valid, final judgment. We have a judgment entered after the taking of evidence and on the merits with U LOCK, Inc. having had a full and fair opportunity to litigate the matter. The claims at issue herein are identical to the issues in the prior proceeding or, at the very least, arise out of the same transaction or occurrence as the claim in the earlier action. Finally, we have Biros collaterally attacking the judgment on which Snyder's claim is based by raising arguments that should have or could have been raised by U LOCK in the prior proceeding thus placing Biros in privity with U LOCK, the Defendant in the prior action.

Res judicata serves interests of great concern to the public such as judgment finality and judicial economy. In light of the foregoing, res judicata is applicable herein and the Bankruptcy Court was precluded from addressing the issues in the Biros Objection to the Snyder Claim.

The proper method of challenging this valid final judgment is via F.R.C.P. 60 in the District Court. It was not proper for Biros to come to the Bankruptcy Court and collaterally attack said judgment. Biros called upon the Bankruptcy Court to exercise appellate review of the District Court findings and ruling which is improper. On the contrary, it is the District Court that sits in an appellate capacity in the context of bankruptcy issues.

In the case of Benninger v. First Colony Life Insurance, 357 B.R. 337 (Bankr. Ct. W.D.Pa. 2006), the Court got behind confessed judgments and disallowed claims based upon same.

In Benninger, the Court was dealing with confessed judgments, not a judgment entered after a hearing with evidentiary rulings. Even so, the Benninger Court noted that "a judgment by confession in Pennsylvania is a final judgment that is not ordinarily subject to collateral attack" Id. at 349.

The Benninger Court further noted that the confessed judgment at issue involved "the very type of transaction intended to be excluded by the rules regarding confessions of judgment." Id. Faced with clearly unlawful judgments, the Benninger Court concluded that it could go behind the confessed judgments and disallow claims based upon said facially unlawful judgments. Id. at 350. The Benninger Court noted, however, that it had reached its "conclusion because it is apparent that the judgments confessed… were unlawful." Id.

In making its decision, the Benninger Court referenced the United States Supreme Court case of Pepper v. Litton, 308 U.S. 295, 301-303, 60 S. Ct. 238, 84 L.Ed. 281 (1939) which also involved confessed judgments which were deemed to be void ab initio and thus facially unlawful. Id.

Here, there is no facially unlawful judgment. The matter at issue concerns a judgment entered after hearing and the taking of evidence. To find the judgment to be invalid would necessarily required the Bankruptcy Court to overrule the factual and legal findings of the District Court. It is respectfully submitted that neither <u>O'Neal</u>, <u>Benninger</u> or <u>Pepper</u> justified getting behind such valid, final judgment. As such, it is respectfully submitted that the Bankruptcy Court lacked jurisdiction to determine Biros' collateral attack upon said judgment.

Finally, it is denied that the Bankruptcy Court maintained jurisdiction to enter a final Order disallowing Snyder's claim based on her federal judgment.

First, as discussed above, the Bankruptcy Court only had authority to render a recommendation in this case, not a final Order, because a mandatory motion to withdraw reference was filed under 28 USC §157(d).  The withdrawal of reference revoked Snyder's consent to a final Order by a bankruptcy judge.  The matter involved interpretation of a federal statute, namely the Fair Labor Standards Act, and interpretation of an FLSA judgment rendered by this Court.   That motion was pending at 2:23-cv-00979 at the time of final judgment and was only dismissed as moot because the Bankruptcy Court entered a final judgment. If the Bankruptcy Court rendered a recommendation, both the facts and the law would be subject to *de novo* review.   *See Fed. R. Bk. Proc.* 9033(d).  Snyder appealed to the United States Court of Appeals for the Third Circuit where it is pending.  *See* 24-1842 (3rd Cir.), *pending.*

Second, the Bankruptcy Court lacked subject matter jurisdiction to entertain an objection from Christine Biros due to her lack of standing, *see* Argument, Section A above.

Third, the Bankruptcy Court lacked jurisdiction because an Article I Court cannot invalidate the judgment from an Article III Court.  <u>In re Garafano</u>, 99 B.R. 624, 633 (Bankr. Ct. E.D. Pa. 1989)("It must be recalled that it is the District Court that has, in the first instance,

jurisdiction over all bankruptcy cases which are, in turn, referred to the bankruptcy judges for that district. 28 U.S.C. §§ 1334(a), 157(a). Thus, we are faced here with a prior decision issued by a court of the superior branch of our own forum. We question whether this court, as an inferior branch of the court, ever could have the authority to effectively overrule a judgment of its own District Court."); Teachers Ins. & Annuity Ass'n of America v. Butler, 803 F.2d 61, 66-67 (2d Cir.1986)("allowing relitigation in the Bankruptcy Court would subvert the intent of 28 U.S.C. § 1294(1) which provides that appeals from District Court decisions are to be heard by the court of appeals for the circuit that embraces the district").

Based upon all of the foregoing, it is respectfully submitted that the Bankruptcy Court lacked jurisdiction to address Biros' claim objection.

### E. Snyder Performed Services For U LOCK, Inc. For Which She Was Not Paid And Thus She Has A Valid Claim Against U LOCK, Inc. Which Should Have Been Allowed By The Bankruptcy Court

Snyder filed a Complaint with the District Court, subject to penalties of perjury, asserting that she had worked for U LOCK, Inc. monitoring security cameras during the period of January 2016 through February 2020 and that she had not been paid for said services.

Snyder also testified to the Bankruptcy Court, under oath, that she worked for U LOCK, Inc. in the manner and during the time frame set forth in her District Court Complaint and that she had not been paid for said service (Doc. 488 Transcript pp. 14-19; A-601 through A-606).

George Snyder, a principal of U LOCK, Inc. testified to the Bankruptcy Court that Shanni Snyder "watched the cameras for those years" (Doc. 488 Transcript p. 86; A-673). George Snyder further testified that he had expected Shanni Snyder to be paid for her work "in some way, shape or form" (7/14 Transcript p. 86). Finally, George Snyder testified that U LOCK, Inc. "had big plans for the property" it owned and so, although Shanni Snyder and other employees

had not been paid for their work, he "figured that money would be there to pay at the end" (Doc. 488 Transcript pp. 87-88; A-674, 675).

Kash Snyder, who was also involved with U LOCK, Inc., testified to the Bankruptcy Court that he was aware that Shanni had performed the service of monitoring cameras for U LOCK, Inc. (Doc. 488 Transcript p. 111; A-698).

No testimony or evidence was provided by Biros to rebut the assertion that Snyder performed the services underlying her claim (Doc. 488 Transcript pp. 24-84, 88-100, 102-110; A-611 through 671, A-675 through A-687, A-689 through A-697). There were insinuations that the hours of work claimed were unrealistic, and that Snyder couldn't perform work and simultaneously care for small children (Doc. 488 Transcript pp. 17-18, 78-79; A-604, 605, A-665-666). There was even some testimony establishing that U LOCK, Inc. didn't keep good records and didn't comply with tax reporting requirements (Doc. 488 Transcript pp. 92-93; A-679, 680). Still, no one testified that Snyder did not perform the services for U LOCK, Inc. In the end, the unrefuted testimony and evidence is that Snyder performed services for U LOCK, Inc. for which she was never paid.

In the 2021 District Court action, Snyder asserted a claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and after testimony, the District Court granted judgment.

Snyder had commenced her District Court action after being advised by a Department of Labor representative about the FLSA.   (Doc. 488 Transcript pp. 45, 52; A-632, A-639).

The Bankruptcy Court did not find Snyder did not work at all, but found it to be some sort of contingency situation.  The Bankruptcy Court stated in its Opinion, "Assuming Ms. Snyder and George testified truthfully, they outlined an agreement to share the profits of a real estate venture, not an employment agreement. This is supported by the conditional promise of

23

compensation, the economic realities of U Lock, and the fact that no one—Ms. Snyder included—considered her an employee.  The conditional promise to an undefined share of profits from a property venture bears no relation to the wage claim Ms. Snyder filed in the District Court. Her expectation of a minimum wage appears largely one-sided, to have arose after the fact, and stems from her discovery of the FLSA rather than any agreement with George." U Lock, 2024 WL 878464 at *17.

   This constitutes error under the FSLA – a statute that the Bankruptcy Court had no authority to analyze considering the mandatory withdrawal of the reference motion. The FSLA does not require a promise of payment, but only that work be performed.  There is no element or analysis of the "promise of compensation."  Moreover, the definition of employment is broadened to encompass practically any form of work, not just employment that receives a regular paycheck. "The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours[.]" _Mei Xing Yu v. Hasaki Rest., Inc._, 944 F.3d 395, 402 (2d Cir. 2019)).  "Consistent with [that] 'remedial and humanitarian' purpose, Congress adopted definitions of 'employ,' 'employee,' and 'employer' that brought a broad swath of workers within the statute's protection."  Id; _Salinas v. Com. Interiors, Inc._, 848 F.3d 125, 133 (4th Cir. 2017)).  "The FLSA defines an 'employee' as 'any individual employed by an employer,'" an "'employer' to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee [,]'" and "the term 'employ'" to include "'to suffer or permit to work.'"  Id. (quoting 29 U.S.C. §§ 203(e)(1), 203(d), 203(g)).

   Therefore it did not matter if there existed a contingent promise, or if everyone testified they did not consider Snyder an employee because she was to be paid when the company was profitable. The FLSA establishes federal minimum wage, maximum hour, and overtime

guarantees that cannot be modified by contract. <u>Genesis Healthcare Corp. v. Symczyk,</u> 569 U.S. 66, 133 S.Ct. 1523, 1527, 185 L.Ed 2d 636 (2013).

Under the FLSA, employers are required to pay their employees at least a specified minimum hourly wage for work performed 29 U.S.C.§206.

Congress and the court have both recognized that of all the acts of social legislation, the Fair Labor Standards Act has the broadest definition of "employee". <u>Donavan v. DialAmerica Marketing, Inc.,</u> 757 F. 2d 1376, 1382 (3d Cir. 1985); <u>Equal Employment Opportunity Commission v. Zippo Mftg. Co.,</u> 713 F. 2d 32, 37 (3d Cir. 1983).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee". 29 U.S.C. § 203(d). An employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To employ means "to suffer or permit work." 29 U.S.C. § 203(g).  Certainly, Snyder fell within those categories considering she watched the camera in the interest of U Lock.

As to the interstate commerce element, the parties did not raise it at the hearing.  However, the judicially noticeable schedules, Entry 63, on file with the Bankruptcy Court show that U Lock maintained storage clients from outside of Pennsylvania.  Indeed, clients existed from Costa Rica, Connecticut, Massachusetts, and Washington.   Snyder's judgment was based on the work she averred she did watching the video cameras remotely, thus protecting the interstate goods.  29 CFR 779.105 makes it clear that watchmen, guards, and caretakers of facilities engaged in interstate commerce fall under the provisions of the FLSA. The FSLA can be invoked when plaintiff handled goods and materials that had moved in interstate commerce. <u>See</u> <u>Donovan v. Pointon</u>, 717 F.2d 1320, 1322-23 (10th Cir. 1983); <u>Brennan v. Dillion</u>, 483 F.2d 1334, 1336-37 (10th Cir. 1973); <u>see also</u> <u>Dole v. Odd Fellows Home Endowment Bd.</u>, 912 F.2d 689, 693

(4th Cir. 1990) ("Local business activities are subject to the [FLSA] when the enterprise employs workers who handle goods or materials that have moved in interstate commerce."); see also Radelescu v. Moldowan, 845 F. Supp. 1260, 1265 (Dist. Ct. N.D. Ill. 1994) (determining that although purchased locally, supplies had previously moved in interstate commerce and supplies were handled and used by employees).

Ultimately, the FLSA makes clear that the employer-employee relationship under the FLSA is defined broadly "covering some parties who might not qualify as such, under a strict application of agency law principles" Nationwide Mutual Insurance v. Dardeau, 503 U.S. 318, 326, 112 S. Ct. 1344, 117 L. Ed 2d 581 (1992).

Here, Snyder performed services for U LOCK, Inc. and was not paid for same. No evidence to the contrary has been provided. The only attacks upon said proposition involve challenges to the amount of hours worked alleged and the failure of Snyder to list U LOCK, Inc. as an employer on certain documents which Snyder explained in detail at the evidentiary hearing (Doc. 488, Transcript pp. 23-24, 43-65; A-610, 611, A-630 through 652).

Snyder was an employee of U LOCK, Inc. under the FLSA. She was not paid for the work she performed. Her District Court Complaint was well stated and the judgment entered in her favor was proper and warranted.

An issue was raised by Biros and the Bankruptcy Court that Snyder may be ineligible under the FLSA under 29 U.S.C. § 203 (s)(2) in that the Act does not apply to employees that has as its only regular employees the owner, and his or her parents, spouse, children or other members of the immediate family. However, testimony at the evidentiary hearing revealed that not to be the case as U LOCK, Inc. employed numerous non-relatives of Snyder (Doc. 488, Transcript pp. 22, 86-87; A-609, A-673, 674). Further, Snyder herself was not an owner, officer or director of U

LOCK, Inc. (Doc. 488 Transcript pp. 14, 111; A-601, A-698).   Moreover, the Bankruptcy Court

found in its opinion, as to U Lock, "The Biroses have denied control, though not their

involvement," *In re: U Lock,* 2024 WL 878464 *2, meaning that the company was more than

just George and Kash Snyder.

Insinuations were made that Snyder and her brother, George (a principal of U LOCK, Inc.)

colluded to allow Snyder to take a default judgment in District Court. However, both Snyder and

George Snyder denied same, under oath, at the evidentiary hearing (Doc. 488 Transcript pp. 21,

87; A-608, A-674) with no evidence to the contrary. Biros cannot rely on mere speculation and

conjecture to support her objection. Biros was afforded an opportunity to present evidence of

collusion, but was unable to provide any.

The Bankruptcy Court, in its Opinion (Doc 559; A-759 through A-763), analyzed the

applicability of Snyder's Claim to FSLA and concluded that she had no claim thereunder.

However, Snyder addressed her status as an employee of U LOCK, she established that there

were workers at U LOCK other than her relatives. The Bankruptcy Court devoted the bulk of its

analysis to whether U LOCK and/or Snyder were "engaged in commerce" (Id.). The Bankruptcy

Court noted that U LOCK, as an enterprise, had revenues below $500,000.00 which rendered it

as not covered by FSLA (Doc. 559; A-761, 762). But, even if U LOCK was not a covered

enterprise under FSLA, employees of such entities are still subject to FSLA's minimum wage

provisions if they are individually engaged in interstate commerce 29 CFR 779.103. The

Bankruptcy Court here found that Snyder did not establish that she "engaged in commerce". Yet

she performed services for an entity which provided storage services to multi-state customers. It

is believed that the Bankruptcy Court erred in its conclusion and that Snyder's claim under

FSLA was not valid.

Allegations that the District Court judgment amount was excessive was addressed by Snyder at the evidentiary hearing where she explained her calculation of damages and the extra liquidated damages awarded by the District Court (Doc. 488 Transcript pp. 15-18, 20-21; A-602 through 605, A-607, 608).

As noted, Snyder believes that her claim under the FLSA was valid, warranted and proper. She further believes that the judgment she obtained on said claim should stand and that her claim should be allowed by this Honorable Court.

If, arguendo, this Honorable Court agrees with the Bankruptcy Court and finds that the FLSA is somehow inapplicable herein, it is submitted that Snyder has a valid claim, in some amount, based on the unpaid work she performed under the concepts of unjust enrichment and/or quantum meruit. Snyder has a valid, legitimate claim herein. The Bankruptcy Court erred in disallowing said claim in its entirety.

Finally, as to the Bankruptcy Court's finding that the federal court judgment overstated Snyder's working hours because she was an on-call worker and did other household chores and babysat during the period, its jurisdiction under 11 U.S.C. 502 was to determine the hours and reduce the claim, not deny it flatout.  This is especially so considering that the Order for Relief giving the Bankruptcy Court jurisdiction to administer claims at all conclusively established Snyder had a claim of at least $10,000. 11 U.S.C. 303(b)(2).

## VII.  <u>Conclusion</u>

Based upon all of the foregoing, it is respectfully submitted that this Honorable Court should vacate or reverse the Bankruptcy Court's disallowance of Snyder's claim.

Date: <u>June 3, 2024</u>

Respectfully Submitted,

<u>*/s/ John P. Lacher*</u>
JOHN P. LACHER
PA I.D.#62297
The Lynch Law Group
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
(724) 776-8000
(724) 776-8001
jlacher@lynchlaw-group.com

AND

<u>*/s/ David L. Fuchs*</u>
DAVID L. FUCHS
PA I.D. #205694
Fuchs Law Office, LLC
554 Washington Ave, First Floor
Carnegie, PA 15106
(412) 223-5404 (phone)
(412) 223-5406 (facsimile)
dfuchs@fuchslawoffice.com