**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE: U LOCK, INC.,                             )
                                                 )
Debtor,                                          )
                                                 )
SHANNI SNYDER,                                   )
                                                 )
Appellant,                                       )
         v.                                      )    Civil Action No. 24-478
                                                 )    Bankruptcy No. 22-20823
CHRISTINE BIROS,                                 )
                                                 )
Appellee,                                        )

**<u>MEMORANDUM OPINION</u>**

## I.  INTRODUCTION

This bankruptcy appeal involves a dispute between competing creditors in the involuntary Chapter 7 bankruptcy of U Lock, Inc., ("U Lock").  (Docket No. 1).  Appellant Shanni Snyder ("Ms. Snyder") appeals the Memorandum Opinion and Order of the Honorable Gregory L. Taddonio of the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court") dated February 29, 2024.  (A736-A773).[1]  In this decision, the Bankruptcy Court sustained the objection of Appellee Christine Biros ("Ms. Biros") and disallowed Ms. Snyder's proof of claim asserting that U Lock owed her unpaid wages under the Fair Labor Standards Act, ("FLSA"), as it was not factually or legally supported.  (*Id.*).

Ms. Snyder argues that the Bankruptcy Court's decision disallowing her proof of claim should be vacated while Ms. Biros asks that it be affirmed.  (Docket Nos. 7; 17).  Ms. Snyder declined to file a Reply Brief, as is authorized under the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 8018(a)(3). As such, the appeal has been fully briefed and is now ripe for

---

[1]      The Court notes that the appendix was filed by Appellant Ms. Snyder at Docket No. 8 and is cited as "A." The supplemental appendix was filed by Appellee Ms. Biros at Docket No. 16 and cited as "B."

disposition.  (*Id.*).  After careful consideration of the parties' positions and for the following reasons, the Bankruptcy Court's Memorandum Opinion and Order will be AFFIRMED.

II.  BACKGROUND

Because the facts are thoroughly set forth in the Bankruptcy Court's decision, the Court focuses on those necessary to resolve this appeal.  (*See* A736-773).  To that end, Ms. Snyder is an experienced litigant and has been involved in numerous actions over the past 15 years, including representing herself in several matters.  (A748).  She is also the sister of the majority shareholders of U Lock, i.e., Kash and George Snyder.  (A737).  The brothers formed U Lock in 2015 and purchased commercial property on Route 30 in North Huntington, Pennsylvania using a loan they obtained from Ms. Biros.  (A737).  U Lock was unable to develop the property as intended but operated a small self-storage facility which generated minimal revenue over the next few years.  (A738).  U Lock defaulted on the loan and in 2017, litigation ensued between Ms. Biros and U Lock in the Court of Common Pleas of Westmoreland County.  (A738).  After various proceedings in the trial court, the property was ultimately awarded to Ms. Biros in August of 2019.  (A738-739).  Appeals followed which prevented Ms. Biros from taking possession of the property at that time.  (A739; B79; B86; B87).

During the state litigation, U Lock served discovery responses and presented other evidence including testimony indicating that U Lock did not have any employees and Ms. Snyder was not involved in the company.  (A175-A280).  Ms. Snyder was a party to a child custody case in March of 2018 and declared under penalty of perjury that she was unemployed.  (A628-A632; A796-A780).  A few months later, she filed a pro se petition for bankruptcy protection under Chapter 7 and related schedules swearing that she was not employed during 2016, 2017 and 2018 and she was not owed any unpaid wages from any employer.  (A806;

A811; A845; A864; A877).  The Trustee in Ms. Snyder's bankruptcy case certified that there were no assets available for distribution and she received a discharge of her debts, with the case being closed in July of 2019.  (A652).

In May of 2021, the Superior Court of Pennsylvania affirmed the lower court's decision awarding the property to Ms. Biros.  *See Biros v. U Lock Inc.*, 255 A.3d 489 (Pa. Super. Ct. 2021).  Ms. Snyder next proceeded to federal court and filed a pro se complaint against U Lock seeking $131,351.00 in unpaid wages and overtime for alleged violations of the FLSA.  (B9-B17); *see also Snyder v. U Lock, Inc.*, Civ. A. No. 21-907, Docket No. 1 (W.D. Pa. Jul. 14, 2021).  She alleged that she worked for U Lock "monitor[ing] video surveillance and cameras" every day from January 1, 2016 through February 15, 2020 between the hours of 5:00 p.m. and 3:00 a.m.  (B9-B17).  She claimed that she was entitled to $7.25 per hour as well as overtime compensation throughout that period and that U Lock had promised to pay but repeatedly told her that it was deferring her payments until a mortgage could be obtained on the property.  (*Id.*).  Ms. Biros had an acquaintance serve the complaint on one of the principals of U Lock—her brother George.  (A618).

U Lock did not respond to Ms. Snyder's FLSA Complaint and she moved for default judgment.  (B20).  A brief hearing was held before the Honorable Robert J. Colville of this Court at which time only Ms. Snyder appeared, and she stated under oath that she worked the hours claimed in her Complaint.  (B18-26).  However, she did not disclose to Judge Colville that: she had been awarded a discharge in bankruptcy and that a portion of her claim was necessarily part of her bankruptcy estate; she had previously stated in declarations filed in other courts that she was unemployed during 2016, 2017 and 2018 and was not due any unpaid wages; and her

brothers were the principals of U Lock.[2]  (*Id*.).  At the conclusion of the hearing, the District Court entered a default judgment against U Lock in the amount of $262,702.00, including unpaid wages, overtime and liquidated damages.  (A4; B24-B25).  She then made no effort at that time to inform the Trustee of her bankruptcy case that she had obtained the default judgment.  (A652). But, over the next few months, Ms. Snyder registered the judgment in state court, had the Prothonotary in Westmoreland County index a lis pendens against the property, and filed an involuntary Chapter 7 bankruptcy petition against U Lock.[3]  (A6; B27-B29; A659).

As in the FLSA wage case, U Lock did not contest the filing of the bankruptcy petition. (A6).  On May 27, 2022, Ms. Snyder filed the instant proof of claim seeking $263,100.00 for the alleged FLSA violations and attached the prepetition judgment for support.  (A-3).  She once again did not disclose to the Court her own bankruptcy nor that the Trustee of her case had an interest on the proof of claim form.  (A652).  Instead, Ms. Biros raised the issue in a motion to dismiss the U Lock bankruptcy case.  *See In re U Lock, Inc.*, Bank. Case No. 22-20823-GLT, Docket No. 14 (Bankr. W.D. Pa. May 20, 2022).  Although that motion was denied, the Bankruptcy Court questioned Ms. Snyder at a hearing at which time she admitted that she failed to disclose her own bankruptcy or advise the Trustee for her case and claimed ignorance of the need to do so.  *See Trans. 6/8/22 hearing* at 18-19; *In re U Lock, Inc.*, Bank. Case No. 22-20823-GLT, Docket No. 38 (W.D. Pa. Jun. 8, 2022).

At the Bankruptcy Court's direction, Ms. Snyder moved to reopen her own bankruptcy case and eventually, she and the Trustees of both cases entered into a stipulation pursuant to

---

[2]     This Court expects candor from pro se litigants and counsel at all times.  *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 149 (3d Cir. 2024) (quoting *Me. Audubon Soc'y v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990)) ("Candor is especially critical when proceedings are non-adversarial. At ex parte hearings, for instance, 'the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor.'").

[3]     Judge Taddonio has presided over U Lock's bankruptcy case from the outset, commenting that the matter has been "unreasonably contentious," while noting the considerable acrimony between the parties, and the "senselessness" of their various disputes.  (A742).

which they all agreed that any recovery based on Ms. Snyder's proof of claim against U Lock would be split, i.e., the first $32,500.00 would go to Ms. Snyder's creditors and she could retain the balance.  (A651-A652); *see also In re U Lock*, Bankr. Case No. 22-20823-GLT, Docket No. 228 (Bankr. W.D. Pa. Dec. 1, 2022).  The Trustee in Ms. Snyder's own bankruptcy case also agreed that she had standing to pursue the proof of claim against U Lock.  (*Id*.).  Judge Taddonio approved this stipulation after a hearing on January 27, 2023 and noted that:

> [b]y approving this stipulation, the Court makes no findings that are binding in the bankruptcy case of In re Shanni Sue Snyder, Case No. 18-21983-CMB other than to recognize and acknowledge that the parties to this proceeding (including Shanni Snyder and Trustee Zebley) consent to giving Christine Biros relief from the automatic stay in Shanni's case for the sole purpose of pursuing an objection to her proof of claim (including Claim No. 1-1) in the U Lock, Inc. bankruptcy case.

*See In re: U Lock, Inc.*, Bankr. Case No. 22-20823-GLT, Doc. No. 305 (Bankr. W.D. Pa. Jan. 27, 2023).  As part of this proceeding, Ms. Snyder also agreed to remove the lis pendens against the property she had filed in Westmoreland County and conceded that her proof of claim was not secured on any of the tangible or intangible assets of U Lock.  (A-103).  The Bankruptcy Court also recognized that the Trustee had "given up whatever right he had to avoid [the default] judgment under the avoiding powers pursuant to the Stipulation."  (*Id*.).  Thereafter, on February 24, 2023, Ms. Biros filed her objection to the proof of claim, wherein she expressly pled that she "is a creditor and party-in-interest in [the U Lock bankruptcy] case and thus has standing to object to the claim pursuant to 11 U.S.C. § 502" and that the claim should be disallowed under § 502(b)(1) because it is allegedly "unenforceable under any agreement or applicable law." (A-161 at ¶¶ 3, 15).  Ms. Snyder submitted a response to the objection on March 27, 2023 and then later filed a motion to withdraw the reference, wherein she asked that the District Court resolve the

parties' disputes.  (*See* A-455; A-517).  Ms. Snyder did not challenge Ms. Biros' standing to object to the proof of claim in either of these submissions.  (*Id*.).

A preliminary hearing regarding Ms. Biros' objections and other issues was held before Judge Taddonio in April 2023, at which time "the [Bankruptcy] Court found that Ms. Snyder's default judgment was not entitled to preclusive effect and scheduled an evidentiary hearing." (A744).  The Bankruptcy Court authorized the parties to conduct discovery, directed them to file briefs on a jurisdictional issue raised by Ms. Snyder, convened a hearing on July 14, 2023 at which time the parties presented evidence, and accepted post-hearing briefs from the parties. (A744; B89-118).  The Bankruptcy Court issued a Memorandum Opinion and Order on February 29, 2024 disallowing Ms. Snyder's proof of claim and issuing a rule to show cause directing Ms. Snyder to show cause why sanctions should not be imposed.  (A736-A773).  Most relevant here, Ms. Snyder and her brothers Kash and George testified at the hearing and the Bankruptcy Court determined that "none of them testified credibly in support of Ms. Snyder's claim.  Frankly, all that was offered was an implausible, self-serving narrative littered with discrepancies and contradicted by prior sworn statements."  (A744).  The Bankruptcy Court extensively discussed the demeanor of each of these witnesses and the content of their testimony as well as examined the evidence supporting the assessment that they all lacked credibility.  (A744-751).

Among other things, Judge Taddonio found that: Ms. Snyder's claim was a sham unsupported by any documentary evidence and undermined by her prior contemporaneous sworn statements in court proceedings; she lied about having worked at U Lock and pursued the claim as part of an effort to continue an ongoing dispute over commercial property that U Lock had hoped to develop but had lost in state court litigation; and she committed fraud on both the Bankruptcy Court during the underlying proceedings and on the District Court when she

obtained a prepetition default judgment against U Lock.  (A763-773).  The Bankruptcy Court

also held, in the alternative, that Ms. Snyder's claim failed as a matter of law because she did not

demonstrate that she was entitled to either "individual coverage" or "enterprise coverage" under

the FLSA.   (A758-763).

The Bankruptcy Court stayed its show cause order pending any appeal regarding its order

sustaining Ms. Biros' objection and disallowing Ms. Snyder's proof of claim.  (A773, n.244).

The District Court then dismissed her motion to withdraw the reference, as moot.  *See Snyder v.*

*Biros*, Civ. A. No. 23-979-RJC, Docket No. 8 (W.D. Pa. Mar. 5, 2024); *In re U Lock, Inc.*,

Bankr. Case No. 22-2083-GLT, Docket No. 567 (Bankr. W.D. Pa. Mar. 5, 2024).  This appeal

followed.  (Docket No. 1).

III. LEGAL STANDARD

This Court has appellate jurisdiction over final judgments, orders and decrees of a

Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  *See In re Connors*, 497 F.3d 314, 318 (3d

Cir. 2007).  In this role, the Court "review[s] the bankruptcy court's legal determinations *de*

*novo*, its factual findings for clear error, and its discretionary decisions for abuse of discretion."

*In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (internal quotation omitted).  It is

also well established that a party may waive or forfeit arguments on appeal by not first raising

them before the Bankruptcy Court.  *Id*. at 372, n.6 (quoting *Hamer v. Neighborhood Hous. Servs.*

*of Chi.*, 583 U.S. 17, 20 n.1, 138 S. Ct. 13, 17 n.1, 199 L.Ed.2d 249 (2017)) (further quotation

omitted) ("Waiver contemplates that an argument has been 'intentional[ly] relinquish[ed] or

abandon[ed],' while forfeiture is merely a failure to timely raise an issue.").

IV. DISCUSSION

Ms. Snyder raises both procedural and merits-based challenges to the Bankruptcy Court's decision disallowing her proof of claim.  (Docket No. 7).  Ms. Biros argues that the Bankruptcy Court's rulings are well-supported and should be affirmed.  (Docket No. 17).  Having analyzed the parties' positions in light of the record before the Bankruptcy Court and the prevailing legal standards, the Court will affirm the decision below.

> A.    *Ms. Biros' Alleged Lack of Standing to Object to the Proof of Claim*

The Court initially turns to Ms. Snyder's contention that the Bankruptcy Court's judgment should be vacated, and the matter should be remanded because Ms. Biros allegedly lacked standing to object to the proof of claim.  (Docket No. 7 at 11-13).  She asks that this Court direct the Bankruptcy Court "to dismiss the objection to the claim unless the estate becomes solvent to a point where unsecured creditors will be paid and then to hear any objections only if the Trustee pursues it or refuses to act."  (*Id*. at 13).  Ms. Snyder admits that she failed to include these arguments in her statement of issues on appeal but asserts that the issue of standing is jurisdictional and cannot be waived.  (*Id*. at n.2).  Ms. Biros counters that she had standing to object as she is an unsecured creditor, the U Lock bankruptcy is ongoing with multiple pending appeals potentially affecting the assets of the estate and that she is competing with other unsecured creditors for any assets that may be distributed.  (Docket No. 17 at 62-64).

In this Court's estimation, Ms. Snyder has failed to demonstrate that Ms. Biros lacked constitutional standing to pursue her objections and waived any arguments that only the Chapter 7 Trustee had the ability to object under the Bankruptcy Code.  To that end, the U.S. Court of Appeals for the Third Circuit recently clarified that "a litigant's 'standing' to pursue causes of action that become the estate's property means its *statutory* authority under the Bankruptcy

Code, not its *constitutional* standing to invoke the federal judicial power." *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020) (emphases in original). To establish constitutional standing sufficient to invoke Article III jurisdiction, a litigant must show only: "(1) 'a concrete and particularized injury in fact,' (2) that is 'fairly traceable' to the defendant's conduct, and (3) that 'a favorable judicial decision' would likely 'redress [it].'" *In re Wilton Armetale, Inc.*, 968 F.3d at 281 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)). Moreover, "[t]he statutory requirements of bankruptcy 'standing' exceed the three elements of constitutional standing," and go to the merits of a dispute rather than the Court's jurisdiction. *In re Wilton Armetale, Inc.*, 968 F.3d at 281 (further citations omitted).

A party's constitutional standing is determined at the start of the case and developments during the litigation do not affect a party's standing to initiate the matter but may bear on the separate issue of mootness. *See e.g.*, *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022) ("When the requirements necessary for standing at the start of a case disappear, it becomes moot and no longer satisfies Article III's case-or-controversy requirement (unless the defendant voluntarily ceased the challenged conduct in response to litigation or the injury is likely to recur while evading review"). Pertinent here, objections to constitutional standing cannot be waived because those issues are jurisdictional, but a litigant may waive an objection to prudential or statutory standing by failing to raise it before the Bankruptcy Court. *See In re Imerys Talc Am., Inc.*, 38 F.4th at 374.

This Court's review of Ms. Snyder's appellate brief indicates that she has largely presented merits-based issues about bankruptcy standing under the Code which she needed to raise initially before the Bankruptcy Court in order to preserve those issues for appellate review. (*See* Docket No. 7 at 11-13). Indeed, Ms. Snyder effectively waived the issue that only the

Trustee could make the objections to her proof of claim because she expressly consented to the automatic stay being lifted in her individual bankruptcy case so that Ms. Biros could bring the objections in the U Lock bankruptcy as part of a stipulation with the Trustees of both cases. *See In re U Lock*, Bankr. Case No. 22-20823-GLT, Docket No. 305 (Bankr. W.D. Pa. Jan. 27, 2023). She also had numerous opportunities to raise these arguments in pre- and post-hearing briefing in the Bankruptcy Court but failed to do so. (*See e.g.*, A530-535; A559-567; A702-712). Thus, the Court finds that Ms. Snyder's arguments that Ms. Biros lacked bankruptcy standing are waived. *See In re Imerys Talc Am., Inc.*, 38 F.4th at 374.

To the extent that Ms. Snyder's arguments are more broadly construed as challenging Ms. Biros' lack of constitutional standing, they are without merit. Courts have recognized that a creditor has constitutional standing to bring a claim against a third party (or lodge an objection to a claim of another creditor) to redress a potential reduction in the amount of estate assets which would be available to satisfy her own claim. *See e.g., In re Wilton Armetale, Inc.*, 968 F.3d at 281-82 (creditors retained constitutional standing to bring fraudulent transfer claims against corporate plunderers whose actions allegedly reduced the available assets of the estate); *see also Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) ("if one creditor files a potentially fraudulent proof of claim, other creditors have standing to object to the proof of claim."). The same principles apply in this case. Ms. Biros is an unsecured creditor who has asserted her own proof of claim against the U Lock bankruptcy estate; if Ms. Snyder's proof of claim was allowed, it would reduce the available assets for other unsecured creditors, including Ms. Biros; and a favorable decision on Ms. Biros' objection would increase the likelihood that she could recover from the estate. (A161-A174). Therefore, she has sufficiently demonstrated constitutional standing to pursue her objections. *See In re Wilton Armetale, Inc.,* 968 F.3d at 281-282.

Accordingly, Ms. Snyder's appeal is denied to the extent she claims that Ms. Biros lacked standing to lodge her objections.

  B.  *Alleged Procedural Issues*

  Ms. Snyder next asserts that the judgment disallowing her proof of claim should be set aside due to several alleged procedural errors in the Bankruptcy Court's handling of this matter. (Docket No. 7).  Among other things, she claims that the Bankruptcy Court was an improper forum, lacked subject matter jurisdiction and did not have the authority to enter a final judgment disallowing her proof of claim because it relied on the prepetition default judgment from the District Court.  (*Id.*).  Ms. Biros counters that the Bankruptcy Court properly exercised jurisdiction over the matter and applied the correct standards in evaluating the default judgment. (Docket No. 17).  The Court has conducted its de novo review of these legal disputes and finds that the Bankruptcy Court correctly determined that it had jurisdiction over the claim and properly resolved the parties' disputes over the default judgment.

  At the outset, binding precedent from the Supreme Court and the U.S. Court of Appeals for the Third Circuit establishes that a creditor consents to the equitable jurisdiction of the Bankruptcy Court by submitting a proof of claim to the debtor's estate.  *See Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98 (3d Cir. 1992).  The filing of a proof of claim initiates the claims allowance process under § 157(b)(2)(B) of the Bankruptcy Code and is a core proceeding which authorizes the Bankruptcy Court to enter final judgment on the claim.  *See In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (citation omitted) (a litigant's consent "gives bankruptcy courts the constitutional authority to enter a final judgment on claims that ordinarily require a ruling by an Article III court.").  As a result, a creditor who has submitted a proof of claim to the estate waives her rights to a jury trial and to have an Article III Judge hear the claim.  *Id.*  The Supreme

Court has emphasized that "[s]he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Katchen v. Landy*, 382 U.S. 323, 332 n.9, 86 S.Ct. 467 (1966) (citation omitted).

In non-core proceedings, the Bankruptcy Court "may only hear and make proposed findings of fact and conclusions of law unless all parties consent." *In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 198 (3d Cir. 2022). Given same, "courts have required claimants to raise the issue of consent before bankruptcy cases conclude" so as to prevent 'a litigant ... 'sandbagging' the court—remaining silent about [her] objection and belatedly raising the error only if the case does not conclude in [her] favor.'" *In re Trib. Media Co.*, 902 F.3d 384, 395 (3d Cir. 2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 482, 131 S.Ct. 2594 (2011)) (further citations omitted). Courts look to the totality of the circumstances to determine if a litigant impliedly or expressly consented to the Bankruptcy Court's jurisdiction. *Id.*

It is this Court's opinion that the record plainly reveals that Ms. Snyder consented to the Bankruptcy Court's jurisdiction and that her present arguments to the contrary must be overruled. *See In re Trib. Media Co.*, 902 F.3d at 395. In this regard, Ms. Snyder initiated the U Lock bankruptcy by filing an involuntary Chapter 7 petition against the company. (A6-A10). She then submitted a proof of claim to the estate and demanded that her claim be allowed. (A1-5). The Bankruptcy Court presided over the claims' objections process, invited briefing from the parties and conducted an evidentiary hearing, at the conclusion of which Ms. Snyder's claim was disallowed. (A465-516; A588-701). Although Ms. Snyder raised two objections to the Bankruptcy Court's jurisdiction, which are further discussed below, she pressed forward with her claim at the hearing and through post-hearing briefing, continually advocating that her claim should be allowed under the Bankruptcy Code. (*See e.g.*, A455-460; A530-535; A702-712).

Now that she has lost, she cannot complain on appeal that she did not consent to the Bankruptcy Court entering a final judgment. *See In re Trib. Media Co.*, 902 F.3d at 394. Following the above precedent, the Court concludes that Ms. Snyder expressly and/or impliedly consented to the jurisdiction of the Bankruptcy Court. *Id.*

Moving on, neither of the two issues that Ms. Snyder raised below challenging the Bankruptcy Court's jurisdiction have any merit.[4] (*See* Docket No. 7). To that end, a Standing Order is in place in this District automatically referring all Title 11 cases (including, among others, the U Lock involuntary Chapter 7 bankruptcy petition) to the Bankruptcy Court. *See* 28 U.S.C. § 157(a); *see also W.D. Pa. Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (W.D. Pa. Oct. 16, 1984). "Once the district court refers the case to the bankruptcy court, unless the district court withdraws that reference, in whole or in part pursuant to 28 U.S.C. § 157(d), the case is within the subject matter jurisdiction of the bankruptcy court." *In re Kashani*, 190 B.R. 875, 885 (B.A.P. 9th Cir. 1995). Ms. Snyder's act of filing a motion to withdraw the reference to the District Court did not affect the Bankruptcy Court's jurisdiction because the District Court denied her motion and declined to withdraw the reference. *See Snyder v. Biros*, Civ. A. No. 23-979-RJC, Docket No. 8 (W.D. Pa. Mar. 5, 2024); *In re U Lock, Inc.*, Bankr. Case No. 22-2083-GLT, Docket No. 567 (Bankr. W.D. Pa. Mar. 5, 2024). Ms. Snyder also declined to avail herself of the available procedures to request a stay of the evidentiary

---

[4] Ms. Snyder further argues that Ms. Biros should have filed a Rule 60 motion to set aside the judgment before the District Court which allegedly would have provided a better forum and procedural mechanism to address the efficacy of the default judgment. (Docket No. 7). She did not raise these arguments below such that they are waived. *See In re Imerys Talc Am.*, Inc., 38 F.4th at 374. Regardless, Ms. Snyder's filing of the involuntary bankruptcy petition against U Lock triggered the automatic stay which necessarily prevented Ms. Biros from filing such a motion against U Lock in the District Court, without her first seeking leave to do so from the Bankruptcy Court. *See Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992) ("Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor. This is so because § 362's stay is mandatory and 'applicable to all entities', including state and federal courts.").

hearing pending the District Court's disposition of her motion.  *See Docket Report*, Bankr. Case

No. 22-20823.  Indeed, Rule 5011 of the Federal Rules of Bankruptcy Procedure states that:

> [t]he filing of a motion for withdrawal of a case or proceeding or
> for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the
> administration of the case or any proceeding therein before the
> bankruptcy judge except that the bankruptcy judge may stay, on
> such terms and conditions as are proper, proceedings pending
> disposition of the motion. A motion for a stay ordinarily shall be
> presented first to the bankruptcy judge. A motion for a stay or
> relief from a stay filed in the district court shall state why it has not
> been presented to or obtained from the bankruptcy judge. Relief
> granted by the district judge shall be on such terms and conditions
> as the judge deems proper.

Fed. R. Bankr. P. 5011(c).  As Ms. Snyder never asked for a stay of the proceedings before the

Bankruptcy Court, this Court rejects her position that the Bankruptcy Court lacked jurisdiction to

enter the judgment disallowing her claim.  *See* 28 U.S.C. § 157(d); *see also* Fed. R. Bankr. P.

5011(c).

   Next, despite Ms. Snyder's arguments to the contrary, Bankruptcy Courts are routinely

tasked with evaluating judgments from federal and state courts during the claims allowance

process.  The Bankruptcy Code states that a proof of claim may be supported by a judgment of

another court.  *See* 11 U.S.C. §§ 101(5), 501.  However, a judgment of another court is not

automatically entitled to preclusive effect and is otherwise subject to the principles set forth in

the Bankruptcy Code for disallowance of claims, exemptions to discharge, and the like.  *See* 11

U.S.C. §§ 502, 523.  The judgment of a federal court must be evaluated under the relevant

federal common law standards of res judicata and collateral estoppel, otherwise known as claim

and issue preclusion.  *See Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171, 171 L.

Ed. 2d 155 (2008) ("The preclusive effect of a federal-court judgment is determined by federal

common law" and setting forth elements of collateral estoppel/res judicata); *see also Bestwall*

*LLC v. Armstrong World Ind., Inc., (In re Bestwall)*, 47 F. 4th 233, 243 (3d Cir. 2022) (setting forth elements of collateral estoppel). If the judgment is not entitled to preclusive effect under these standards, then the Bankruptcy Court must follow the procedures for allowance/disallowance of claims set forth in the Bankruptcy Code. *See* 11 U.S.C. 502(b).

Upon consideration of the record in this matter, this Court believes that the Bankruptcy Court properly applied the legal standards of res judicata and collateral estoppel and correctly determined that the default judgment Ms. Snyder obtained against U Lock was not entitled to preclusive effect. Simply put, Ms. Biros was not a party to the FLSA case before Judge Colville and Ms. Snyder failed to demonstrate that Ms. Biros was in privity with U Lock such that neither doctrine applies to preclude Ms. Biros' objections. *See In re Montgomery Ward, LLC*, 634 F.3d 732, 738–39 (3d Cir. 2011); *see also Taylor*, 553 U.S. at 891. In addition, the judgment was obtained by default and a brief default hearing where only Ms. Snyder appeared is not enough to meet the requirement that the claims or issues be actually litigated before the District Court. *See In re Bestwall LLC*, 47 F.4th at 243. Since Ms. Snyder did not satisfy the elements of res judicata or collateral estoppel, and the objection to the prepetition default judgment was supported with Ms. Snyder's prior inconsistent statements, the Bankruptcy Court correctly required her to establish her claim by a preponderance of the evidence and convened a hearing on the matter. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

Based on the foregoing, the Court denies Ms. Snyder's appeal on these alleged procedural issues.

C.    *Merits of Proof of Claim Under FLSA*

The balance of Ms. Snyder's appeal focuses on the merits of the Bankruptcy Court's decision disallowing her proof of claim. (Docket Nos. 7; 17). As noted, the Bankruptcy Court

determined that Ms. Snyder's FLSA claim was neither factually nor legally supported and disallowed the claim.  (A736-A773).  The Bankruptcy Court added that each of these reasons provided "an independent justification to disallow Ms. Snyder's claim in its entirety." (A759, n.179).  Ms. Snyder argues that the Bankruptcy Court should have credited her own testimony and that of her brothers and wrongly concluded that she was not an employee covered by the FLSA.  (Docket No. 7).  Ms. Biros responds that Ms. Snyder has failed to meet her burden to demonstrate that the Bankruptcy Court erred.  (Docket No. 17).  With respect to these disputes, this Court holds that the lack of factual support for the claim is dispositive and will affirm the Bankruptcy Court's decision disallowing the claim because its factual findings are not clearly erroneous.

As our Court of Appeals has explained,

> [w]hen sitting in an appellate capacity, [D]istrict [C]ourts are obligated to accept a [B]ankruptcy [C]ourt's factual findings unless those findings are clearly erroneous. *See In re Phila. Newspapers, LLC*, 599 F.3d 298, 303 (3d Cir. 2010). Findings of fact are not clearly erroneous unless they are "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[ ] no rational relationship to the supportive evidentiary data." *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 353 (3d Cir. 2002) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir. 1983)).

*In re Fiber-Span, Inc.*, 40 F.4th 79, 93–94 (3d Cir. 2022).  "Great care must be exercised […] to defer to the fact-finding tribunal, absent clear error." *In re Fiber-Span, Inc.*, 40 F.4th at 94. Therefore, when the Bankruptcy Court hears testimony from witnesses, this Court must give "due regard to the opportunity of that court to judge first-hand their credibility," *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020) (internal quotation omitted), because the Bankruptcy Court is "best positioned to assess the facts, particularly those related to credibility and purpose," *In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007).    Finally,

> [i]f the [fact-finder's] account of the evidence is plausible in light
> of the record viewed in its entirety, the [appellate court] may not
> reverse it even though convinced that had it been sitting as the trier
> of fact, it would have weighed the evidence differently. Where
> there are two permissible views of the evidence, the fact-finder's
> choice between them cannot be clearly erroneous.

*In re Allegheny Int'l, Inc.*, 954 F.2d at 172–73 (quoting *Anderson v. City of Bessemer City, N.C.*,

470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)) (further citations omitted).

Ms. Snyder maintains that the Bankruptcy Court erred because it allegedly prejudged the

matter and made comments before the evidentiary hearing questioning the "veracity" and

"validity" of her claim.  (Docket No. 7).  The Court of Appeals has noted that "[J]udges often

inform parties of their preliminary impressions to narrow issues and assist the parties in focusing

both themselves and the court."  *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 172 (3d

Cir. 2012), *as corrected* (Oct. 25, 2012).  In addition, it is not error for the Bankruptcy Court to

provide parties with "a preview of what they needed to do to counteract" these initial

impressions, as doing so encourages "parties to develop additional arguments" and "[m]ost

counsel would prize such insights."  *Id.*  The same is true here as a fair reading of the record

indicates that the Bankruptcy Court expressly qualified the comments, stating that they were not

final determinations and Ms. Snyder was provided with a full and fair opportunity to conduct

discovery and then prove her claim at the evidentiary hearing.  (A69; A478-A479).  If anything,

the Bankruptcy Court's comments should have helped Ms. Snyder and her counsel to better

prepare for the hearing.  *See In re Phila. Newspapers*, 690 F.3d at 172.  The fact that she lost

does not establish any errors by the Bankruptcy Court.

Ms. Snyder also argues that she "wholly disagrees" and "vehemently disagrees" with the

Bankruptcy Court's findings that she lied about performing security monitoring work for U Lock

and that she and her brothers did not testify credibly in support of her claim.  (Docket No. 7).

17

Yet, she does not challenge any of the specific factual findings made by the Bankruptcy Court which would establish that they were clearly erroneous, i.e., completely devoid of minimum evidentiary support or bearing no rational relationship to the supporting evidentiary data. *See In re Milton*, Civ. A. No. 19-184, 2019 WL 4643580, at *2 (W.D. Pa. Sept. 24, 2019), *aff'd*, 828 F. App'x 842 (3d Cir. 2020) (appellant failed to show any factual findings were clearly erroneous based on general assertions as he did not "support that conclusory argument with any citations to the actual record and failed to point out any specific factual errors."). The unchallenged findings include the Bankruptcy Court's detailed assessments of the three witnesses.

As to Ms. Snyder, the Bankruptcy Court wrote:

> [i]n ten years, the Court has never held a stronger conviction that a fraud was perpetrated upon the court as it is following an evidentiary hearing on Shanni Snyder's claim. Ms. Snyder obtained a default judgment under the [FLSA] by swearing that debtor U Lock, Inc. employed her to monitor security cameras for ten hours a day, every day, for four years without paying wages. *She lied*. First to the federal district court who awarded the judgment, and then to this Court by commencing an involuntary petition against U Lock based on a fraudulent claim. Ms. Snyder did so to frustrate creditor Christine Biros' efforts to gain control of U Lock's business premises […], which was awarded to Ms. Biros by final state court orders. […] the Court will disallow Ms. Snyder's claim in its entirety and initiate sanction proceedings against her to address this profound abuse.

(A736) (emphasis in original). Among other things, the Bankruptcy Court added:

> [g]enerally, Ms. Snyder projected confidence on direct examination, appearing relaxed and speaking clearly, but her testimony was consciously abridged to limit the scope of cross-examination. When pressed about inconsistencies, her demeanor became evasive and the volume of her voice dropped as she began to shift and rock in her seat. Other times Ms. Snyder appeared defiant, self-assured that no matter how dubious, no one could disprove anything she said. In sum, while her testimony never strayed far from her concise direct responses, the frequent lack of elaboration left confusing (if not pregnant) gaps which undermined her story.

(A745).  With respect to her brother George, the Bankruptcy Court noted:

> [f]or his part, George provided only half-hearted corroboration of the basic premise of Ms. Snyder's claim. Before delving into his testimony, the Court must stress that it has observed George both on and off the witness stand many times during the pendency of U Lock's case. In the past, the Court has often (though not always) found him to be the most credible party involved with a calm, forthright demeanor. *But this was a different George.* From the minute he took the witness stand, George awkwardly clutched the back rail as if holding on for dear life. He was visibly nervous and flushed, constantly shifting in his seat. It seemed George was testifying against his will.

(A749) (emphasis in original).  The Bankruptcy Court continued:

> Kash Snyder testified last. It did not go well. The most remarkable moment involved an extended back and forth over whether he remembered testifying minutes earlier that he has trouble remembering. From the start, Kash claimed to be unaware that he was identified as a principal of U Lock. He then shockingly stated that he had no recollection of Ms. Biros suing U Lock in 2017 before conceding there was a lawsuit over the Property. Nor did he recall testifying under oath in the Trial Court during that case. In fact, the only thing Kash appeared to remember clearly was that Ms. Snyder was performing "camera work" for U Lock, of which he "had limited knowledge." Needless to say, his testimony was neither credible nor useful.

(A751).  In all, this Court has carefully studied the record and believes that the Bankruptcy Court's detailed factual findings, including the credibility assessments of Ms. Snyder and her brothers describing their demeanor, are well-supported and sees no basis to set them aside.  *See In re Somerset Reg'l Water Res., LLC*, 949 F.3d at 844.

   At most, Ms. Snyder complains that the Bankruptcy Court declined to exercise its discretion to ask her and the other witnesses direct questions at the evidentiary hearing and then described certain gaps in the evidence using rhetorical questions in the Memorandum Opinion. (Docket No. 7).  Again, Ms. Snyder's burden on appeal is to show that the Bankruptcy Court's

inferences from the facts set forth in those rhetorical questions were clearly erroneous.  *See In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009) (inferred facts of the Bankruptcy Court are reviewed under the clearly erroneous standard).  Hence, Ms. Snyder's listing of the challenged rhetorical questions in her brief without pointing to evidence showing that the Bankruptcy Court was wrong and the unanswered questions were actually answered at the hearing or that the factual findings and inferences were somehow inaccurate fails.  *See id.*  Thus, her objections must be overruled.

Overall, it appears that Ms. Snyder's appeal essentially invites this Court to credit the testimony of her witnesses, re-weigh the evidence in her favor, and reverse the decision disallowing her claim.  (Docket No. 7).  However, this Court would commit error if it accepted Ms. Snyder's invitation because the clearly erroneous standard precludes this Court from substituting its own judgment for that of the Bankruptcy Court.  *See In re Wagner*, Appeal No. 22-13642, --- F.4th ----, 2024 WL 4142990, at *5 (11th Cir. Sept. 11, 2024) (citation omitted) ("The record shows that, rather than deferring to the weight that the bankruptcy court accorded [to the three witnesses'] testimony and its interpretation of the documentary evidence, the district court weighed the evidence anew and made its own factual findings—an endeavor neither it nor we have authority to undertake sitting as a reviewing court of the bankruptcy court's decision.").  The fact that Ms. Snyder believes that she presented sufficient evidence from which the Bankruptcy Court could have found in her favor is simply not enough for her to prevail on this appeal.  *In re Allegheny Int'l, Inc.*, 954 F.2d at 172–73 (the fact-finder's choice between two permissible views of the evidence cannot be clearly erroneous).  Rather, this Court must defer to the factual findings and conclusions of the Bankruptcy Court which presided throughout this contentious case, was well familiar with the parties, the debtor's business and the claims

asserted, personally observed the three witnesses testify, and was much better positioned to assess their credibility and weigh the conflicting evidence.  *In re Fiber-Span, Inc.*, 40 F.4th at 94.

For all of these reasons, the Bankruptcy Court's finding that Ms. Snyder did not actually perform work for U Lock and the resulting conclusion that her claim under the FLSA should be disallowed must be affirmed.  *See e.g., In re Washington Mut., Inc.*, 848 F. App'x 84, 87 (3d Cir. 2021) (quoting *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019)) (District Court "may affirm on any basis supported by the record).  Given this disposition, the Court need not consider the alternative theory that Ms. Snyder also failed to prove by a preponderance of the evidence that she was an employee covered under the FLSA.

V.  CONCLUSION

Based on the foregoing, the February 29, 2024 Memorandum Opinion and Order of the Bankruptcy Court disallowing Ms. Snyder's proof of claim is AFFIRMED.  The Court recognizes that the Bankruptcy Court stated that it would hold in abeyance the corresponding order directing Ms. Snyder to show cause why she should not be sanctioned for submitting a fraudulent claim to the estate and the resulting litigation she caused by doing so.  With that said, all litigants and counsel should be reminded of the importance of the "public interest in preserving the integrity of the judicial system," and the Court's role in upholding same.  *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 416 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny Child. & Youth Servs.*, 118 F.3d 1575 (3d Cir. 1997) (internal quotation omitted).  It also bears repeating the decades-old admonitions of the Supreme Court:

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*In re Theokary*, 592 F. App'x 102, 107 (3d Cir. 2015) (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)).   Given same, Bankruptcy Courts have the inherent authority to dismiss a claim as a sanction to serve the dual purposes of punishing the wrongdoing and "preserving the dignity" of the Bankruptcy Court.   *In re Theokary*, 592 F. App'x at 107.

  An appropriate Order follows.

       <u>*s/Nora Barry Fischer*</u>
       Nora Barry Fischer
       Senior United States District Judge

Dated: October 11, 2024

cc/ecf:  All counsel of record.

  The Honorable Gregory L. Taddonio
  United States Bankruptcy Judge